Our third case now this afternoon is number 18-1154, Realtime Data, LLC v. Iancu, and we need to wait a minute, I guess. Mr. Neruzzi, is that how you pronounce it? Yes, Your Honor. Thank you, Kayvon Neruzzi, for Realtime Data, LLC. May it please the Court, Your Honor. This appeal involves the patent offices, the PTAB's determination of obviousness with respect to the claims of the 812 patent, and the basis for that determination was a combination of primarily two references. Well, they're alternative bases. They found it obvious over O'Brien standing alone, right? I disagree, Your Honor. We briefed that issue, and so the way that I would characterize that and the way that I think is accurate to read the decision is that the decision has discussion of whether O'Brien alone meets the claim elements, but the decision recognizes at the outset that there was no institution on the basis of an O'Brien alone ground, and in the conclusion of the decision, it also never states obviousness based on O'Brien alone. In all instances, the conclusion is always based on O'Brien and Nelson. Okay, let's suppose we read it differently, and we find that they found it obvious based on O'Brien alone as one of two alternatives, the first set of claims. What's wrong with that? There are three tiers of problems with that. The first is that the board was not permitted to do so under SAS versus Iancu, the Supreme Court's decision, because there was no such ground in the petition, and the grounds that are in the petition— But the petition argued that O'Brien standing alone made it obvious. Well, I disagree with that, Your Honor, in the sense that the petition has a discussion of O'Brien certainly, but the grounds that are set forth in the petition are always O'Brien with Nelson or O'Brien with Nelson and Welsh. There is never a stand-alone O'Brien ground, so the first contention we have is that the board was not even permitted to make any obviousness conclusion. If there was a request for institution based on O'Brien alone, that's sufficient, right? Well, then we would run into another problem, which is that the board's institution decision never actually instituted based on O'Brien alone. At every level that you look at it, there was never an O'Brien alone theory in this proceeding. It is true that in the reply brief, the petitioner for the first time said, well, you know what? Maybe we don't have the goods on O'Brien with Nelson because we do have a motivation to combine problem, although they didn't characterize it that way. But let's walk away from O'Brien with Nelson and let's focus on O'Brien alone because we think that gets us there. And the board did take them up on that, engaged on that at the oral hearing, and certainly discussed it in the final written decision. But our contention is that they didn't have the ability to render a conclusion of obviousness on that basis in light of what was at issue in the proceeding, and they also never actually formally did that. So those are your two arguments. One, that the petition didn't argue O'Brien standing alone, and two, that they didn't institute based on O'Brien alone. Those are the reasons why the board was not able and empowered to conclude obviousness based on O'Brien alone. However, let's assume for a moment that they did do that and that they were able to do that, just arguendo. Then we run into a second issue, which is that claims 14 through 17 and 21 necessarily depend on the combination of O'Brien with Nelson and Welch. So we can't reach full affirmance under any scenario. Why do those depend on O'Brien, Nelson, and Welch all three being combined? I mean, certainly this clickable aspect is the only thing that's necessary for those other claims that comes from Welch, right? I'm sorry, what was it? The clickable aspect is the only thing that needs to come from Welch. So the board's decision and the petition... The only thing that's added is the clickable aspect of it, right? It's actually, I believe, the fact that it's implemented as an apparatus, so it's an apparatus claim instead of being a method claim. But isn't the only thing that's added the clickable aspect of it, which they get from Welch? I would not characterize it as clickability. The technology here is data compression. And so the method claims 1 through 4, 8, and those might be the only ones. How would you describe what they're trying to get out of Welch? What they're trying to take out of Welch is the idea of taking the teachings of a certain data compression method and implementing them in software within an apparatus. Now, so... So it's putting it into software. Correct. Okay. So to proceed from there, though, the main key argument, I had to make my procedural points for you, but the heart of this argument with respect to O'Brien alone comes down to the claim construction issue, right? Because the meaning of maintaining a dictionary, which is the key limitation that was in dispute in this proceeding, was contested by both parties. And both parties went to the board and said, okay, you know, as to O'Brien alone, you need to make a determination on what maintaining a dictionary means, and here are alternative proposals. I went and took the opposing experts' deposition, a second deposition, spent two or three hours only arguing about the meaning of maintaining a dictionary. We came to the oral hearing. We disputed the point. It was a central point of contention. In the final written decision, they state that it's the focus of the party's dispute, and yet they never construed maintaining a dictionary, and nonetheless found that O'Brien teaches maintaining a dictionary. What's the difference between what you are describing as a missing claim construction and what the board said? I took it at the heart of this. As the board said, O'Brien clearly teaches the same thing as is described in Claim 4. And we read Claim 4 to be an identification of one way of doing maintaining Claim 1. And you point out in your brief here that you can't actually legitimately get that out of the word comprising alone, because comprising alone often means and another thing, not here's a specific example. But if you look at Column 3, Lines 31 to 35, that says, I think in terms, or close to in terms, exactly the same language as in Claim 4, and says this is maintaining by doing that. Why doesn't that language in the spec, Column 3, I think it's Lines 31 to 35 or something, make explicit that the set of actions described in Claim 4 is not just an additional thing, but a form of maintaining? Right, so I think Column 3 that I just pulled up and looked at, the lines that you cited, 31 through 34, 35, simply describes an embodiment which is Claim by Claim 4. So I would say that those two things are coextensive. I don't think Column 3 sheds really light on Claim 4 other than stating what Claim 4 says. Well, that sounds right to me, except that the word by, maintained by, is in Column 3 of the spec, is not in Claim 4, but it tells you that the thing added in Claim 4 is not just an another thing, the way comprising sometimes is, but is actually an identification of a particular, let's call it embodiment of the maintaining language of Claim 1, which is exactly what the board concluded Claim 1 maintaining covers. And whether it's covered or means, I'm not sure that makes any difference. Right, so this is the key issue when it comes to O'Brien and whether it meets the Claim 1 notations. It goes to this notion of what does maintaining the dictionary mean? And the board, as you described, sort of said, well, effectively said, I think the fair reading of the board's decision is to say the meaning of maintaining a dictionary is coextensive with what comes after comprising in Claim 4. But it doesn't have to be coextensive, it just has to include it. It could be because you're looking at the broadest reasonable construction, that at least it's saying that maintaining a dictionary at least includes this, it can be interpreted this way. It might also have other meanings that fall within a penumbra of what is the broadest reasonable construction, but at least it means this. I understand your point, Judge. And our response to that is, that is an incorrect interpretation of maintaining a dictionary. There's something more that maintaining a dictionary requires. And the reason is because, and we described this in the brief and we certainly presented below, the heart of the invention of the 812 Packet, the problem and solution that is at its core, is not addressed and encompassed by that language of Claim 4 interpreted that way, or Column 3, Lines 31 to 35. There's something missing. Can I interrupt you for a minute? Yes. Because we've gotten off what I thought was your central point, which was that the PTAB erred by not construing the term at all. Is that no longer your point? Well, that is, the PTAB erred by not construing the term. But they did construe it. They said it includes at least what's described in Claim 4. And we also have argued extensively in our briefing that if one were to read the PTAB's decision as effectively construing maintaining a dictionary with what it did in its analysis of Claim 4, that would be incorrect. That that would be an incorrect construction of the claim. Because of the comprising point? Not only because of the comprising point. The comprising point is a very strong evidentiary indication that maintaining a dictionary means something more, and there's case law on that, that comprising means including but not limited to. In this instance, that's particularly applicable because simply saying maintaining a dictionary means only what's in Column 3, Lines 31 to 34 or 35, or what comes after comprising in Claim 4, would be missing the heart of the invention here. The heart of the invention of this patent is solving the problem of how do you strike the balance between compression speed and compression ratio? And to do that, you have to make a choice of at what point is your dictionary, for dictionary compression purposes, too big? At what point does it have too much? And I think the Court can relate to this in sort of its ordinary experience in dealing with a lexicon. It's great to have a big dictionary, but then you have to spend more time going through it. And so there's a trade-off there. The 812 patent teaches specifically that there's a point at which you hit a predetermined threshold in the dictionary size and you discard your dictionary. So you maintain until you discard. That's not encompassed by the comprising language of Claim 4, and it's not encompassed in Column 3, Lines 31 to 35. So what O'Brien does is it starts a new dictionary, right?  Is that correct? They both start a new dictionary, but they start a new dictionary in a different way. O'Brien's way of deciding when to start a new dictionary is to say from the outset that I'm going to take the uncompressed data and I'm going to chop it up into chunks and I'm just going to compress each chunk and whenever I'm done compressing that chunk, I'm done with that dictionary. Our approach in the 812 patent, and that's called in the art a multiple dictionary structure, right? Our approach in the 812 patent is what's described as a single dictionary structure, which is why they look to Nelson in the first place because they're looking for single dictionary structures. A single dictionary structure is you take the uncompressed data that's coming in and you keep compressing it until you hit a point when your dictionary is full or your dictionary has just gotten really big. Maybe you never even get rid of the dictionary. The 812 patent, in particular, within the art of a single dictionary structure, says you hit a point at which you determine the dictionary is too big. You then discard and you reset, and that's covered in— Does that mean that you start a new dictionary? It does mean that you start a new dictionary, but it means that your determination is much more nuanced than the one in O'Brien, and what that allows you to do is it allows you to maintain a larger dictionary in many circumstances, therefore— I don't understand what you're saying. What happens to the material that's in the discarded dictionary? So, this specific type of dictionary encoding entails an approach where there's a certain amount that is pre-coded into every dictionary, so every new dictionary starts with some basic elements that are part of the lexicon of the dictionary, but beyond that, when you start a new dictionary, then you start with nothing else. You're just discarding some of the data that was in the old dictionary. You basically discarded— Whereas O'Brien doesn't discard any data. It's all saved in multiple dictionaries. That is correct, yes. Why isn't that process, though, part of what the patent refers to as initialization? If you look again at the language that Judge Toronto was pointing to in Column 3, it says, in one aspect of the invention, the dictionary is dynamically maintained by doing a certain thing, which happens to be the thing that's in Dependent Claim 4, and then it says, in yet another aspect of the present invention, the dictionary is initialized during the encoding process if the number of code words in the dictionary exceeds a predetermined threshold. So, I mean, I understand what you're describing the patent to disclose, but I'm not sure that, you know, this step of resetting the dictionary falls within maintaining. So, for the sake of formality, I do need to make the point that I believe this is a conversation that should have been addressed with the board and that was had with the board. I don't think that this level of factual argumentation is really appropriate at this level, although I understand that... If you're telling us that the claim construction found by the board is incorrect, then we need to look at the intrinsic evidence to figure out whether that's true. And so, with that preamble, I'd like to address your question, which is, if you take a look at Figure 2B, and this is the one that we really emphasize to the board, and the discussion of Figure 2B in the specification, we think that that's most relevant to the question of maintaining a dictionary and what it means. As to initialization, you'll see in Figure 2B, looking at Diamond 217, there's a question, would addition of entry to dictionary exceed threshold? And if the answer is yes, then you reset dictionary to initial state. And so, that shows you that initialization is a step that comes after, in some circumstances, a dictionary that was maintained and that then needed to be reset. Once maintaining a dictionary... Okay, but what's the basis for saying that Figure 2B is the exclusive representation of what's within the scope of the claim? There is no other embodiment other than Figure 2B as to this issue of how the determination is made whether to keep the dictionary or restart it. The only way that the dictionary is maintained is the way described in Figure 2B. And that's a point that we emphasize. So you're saying Figure 2B shows one embodiment of all of maintaining the dictionary? It is the only embodiment. With respect to Diamond 217. Where is it the specification says that 2B depicts maintaining the dictionary? I will have to pull up that portion of our record. It is a point that we certainly argued below and I believe that it is included in the appendix. I'm not worried about your argument. If you could point to me to the language in the specification that says that Figure 2B shows maintaining a dictionary or something to that effect. So if you look at column 9 starting in line 25 this is all a description of how the dictionary of this pattern is maintained. And it starts by saying that for a new string a new entry is made and then a determination is then made as to whether the addition of the new entry would exceed the predefined maximum number of entries for the dictionary, step 217. If the addition of the new entry would not result in exceeding this threshold, negative determination step 217, the new entry will be added to the end of the dictionary step 218, i.e. the entry will be indexed with the next available dictionary index, etc. And then it goes on at line 38. On the other hand, if the addition of the new... The problem I'm having with these points is like, look for example in column 7 at the bottom. Column 7. Column 7 at the bottom it says, referring now to Figures 2A and 2B, a flow diagram illustrates a method for compressing data according to one aspect of the present invention. It doesn't say anything like Figure 2B shows maintaining the dictionary. You know, instead where the patent tells us, tells the reader where maintaining a dictionary is it's with respect to something that doesn't include resetting the dictionary. And this is an important point. And this is one that we also had to discuss below. It is true that there's no specific statement in the 812 specification of lexicography for example where it says, here is quote, maintaining a dictionary and this is exactly what it is and also see Diamond 217 in Figure 2B. There is no such statement. We acknowledge that. Maybe there is in column 3 lines 30-35. We don't think that that is lexicography by any means. What we read the patent to say is that there is an embodiment and the embodiment is Figure 2B with Diamond 217. And the language that you point to in column 7 talks about it describes it sort of as an embodiment. It doesn't say it's the only embodiment. I think we're out of time. We'll give you two minutes for rebuttal. Sure. Thank you. Ms. Craven. Good afternoon Your Honors. May it please the Court. The Board had two alternative ways of coming to a conclusion of obviousness. The first was based on O'Brien teaching all the limitations of the claim. We sort of called it O'Brien alone but the petition said O'Brien has all the limitations. If the string encoder to evidence that the string is a dictionary, we rely on Nelson. So the only thing then that Nelson was relied on is to evidence what O'Brien taught for its string encoder that it was a dictionary type algorithm. And no one disputes that anymore. So it comes down to O'Brien being an obviousness ground even though it does in fact teach all the limitations. And the only dispute then is for the construction of maintaining a dictionary. The Board construed it, as everyone has noted, by looking at Claim 4. Claim 4 has that maintaining the dictionary comprises the step of you're adding this extra word to the dictionary. And I think the Board's point is whatever maintaining the dictionary is, it's at least broader in Claim 1 than it is this step in Claim 4. And O'Brien teaches Claim 4 those words about having the string added to the dictionary. And looking at the specification, the only thing that's there for that construes maintaining a dictionary is that dynamically maintaining and updating by including this language of Claim 4. And then Claim 5 which depends from Claim 4 has this additional step that you initially initiated if the dictionary becomes full. So I think the entire intrinsic record really shows that the first step whatever maintaining a dictionary is is you're having it around essentially the implicit construction that was in the petition that you created, you populated and you use that data structure while you're searching the dictionary. The step of Claim 1 is you're going to search the dictionary and then you're going to output the code. So you have to have the dictionary around for you to do that. So you've maintained it. Claim 4 gives you that additional step where you're going to add new code words and then Claim 5 has that additional step of the idea. So that additional step that's in Claim 5 can't be within Claim 4 and it can't be within Claim 1. So that's basically their argument is that the limitation in Claim 5 is a necessary part of maintaining a dictionary but that can't be the case. It would seem the most reasonable reading under the broadest reasonable construction is that Claim 5 encompasses the idea of resetting a dictionary where it's full, which is hard then to read into Claim 1. It's true it could be a further refinement of that but there's nothing in the specification that has set forth maintaining a dictionary to include the limitations that Realtime wants to read into it. And really I think that's another point is Claim 27 is a method of decompressing. It also has the step of maintaining a dictionary but there's no process during maintaining a dictionary where the dictionary is getting full. So you also have that claim limitation in a method where the dictionary is never going to get full. So I think the board, though they didn't expressly construe the maintain dictionary was essentially doing it through Claim 4. Whatever it is, it's broader than that based on the intrinsic record. So if this court agrees with the board's claim construction and O'Brien teaches all the limitations of the claim, we'd ask this court to affirm on that ground. There is the alternative ground. Realtime didn't get into it in their opening argument, so unless there's no questions I'll yield the remainder of my time. Okay, thank you. Mr. Neruzzi, you have two minutes here. Yes, Your Honor. I think that the appellee's argument crystallizes the issue that we've been debating throughout this proceeding on this item. There's a distinction between having the dictionary and maintaining the dictionary. The scope of maintaining a dictionary that has been ascribed by the board in its decision and that appellee just argued for and this is the key point, would cover all forms of dictionary compression. It is the necessary definition of all dictionary compression that you have a dictionary and that you look up whether what came to you is in that dictionary and if it's not then you added it. That's just dictionary compression. So if maintaining a dictionary just means having a dictionary then it strips away all meaning from the word maintain, special meaning in the patent, and it takes away the notion that the patent came up with any inventive concept around maintaining a dictionary which is inconsistent with the teachings of the specification. What do you say in response to the argument the first argument about Claim 5 and the second one about Claim 27? 27 I understand is maintaining a dictionary with decompression where there's no addition going on at all and Claim 5 explicitly says reinitialize if the thing gets too big and that won't be, that therefore can't be a necessary part of maintaining in Claim 1 and in fact Claim 5 survives because it wasn't even the subject of the institution. Claim 5 was not a challenge I believe. Our argument on that is that the meaning of maintaining a dictionary encompasses what is recited in Claim 5. Now it does not have to be the case through claim differentiation that the independent claim is broader it only needs to be the case that the dependent claim cannot be broader. At best we would end up in a situation where Claim 5 and 1 are co-extensive there's nothing to say that that's not correct. And what about the decompression? Never mind. I think we're out of time. Thank you Mr. Nazari.